**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-3490 & 09-3491
_____

OAKLAND BENTA;
ANTHONY ELSKOE,
                                        Appellants

v.

ADELBERT BRYAN


Appeal from the District Court of the Virgin Islands, Appellate Division
(No. 1-02-cv-00122)

Argued: December 15, 2010

Before: McKEE, *Chief Judge,* Fuentes and Smith, *Circuit Judges*

OPINION

Kim Kocher, Esq.
White & Williams
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103

**Attorney for Appellant**


Maxwell D. McIntosh, Esq.
1009 North Street
Christiansted, St. Croix
USVI, 00820

**Attorney for Appellee**

McKEE, *Chief Circuit Judge*.

Oakland Benta and Anthony Elskoe appeal the order of the District Court of the Virgin Islands Appellate Division affirming a judgment awarding Senator Adelbert Bryan $260,000 in damages for alleged violations of his First Amendment rights. For the reasons that follow, we will vacate the decision on the First Amendment claim. For reasons explained below, we will also refer Bryan's counsel to the Third Circuit Court of Appeals' Standing Committee on Attorney Discipline and to the Supreme Court of the Virgin Islands for any action that they may deem appropriate.

## I. FACTUAL BACKGROUND[1]

On July 3, 1998, a Commission established by the Governor of the Virgin Islands organized an event to commemorate the 150th anniversary of "Emancipation Day," an event that celebrates the end of slavery in the Virgin Islands. Plaintiff Adelbert Bryan, a senator in the Virgin Islands legislature as well as a member of the Commission, was invited to speak at the event along with several other prominent individuals.

---

[1]    We have jurisdiction pursuant to 48 U.S.C. § 1613a(c). We review the denial of a motion for judgment as a matter of law *de novo*. *Eddy v. V.I. Water & Power Auth.*, 369 F.3d 227, 230 (3d Cir. 2004). We "apply the same standard that the District Court did, namely whether, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Id*.

In the context of First Amendment claims, "reviewing courts have a duty to engage in a searching, independent factual review of the full record." *United States v. Scarfo*, 263 F.3d 80, 91 (3d Cir. 2001) (citations omitted)(internal quotation marks omitted). We must examine the whole record to ensure "that the judgment does not constitute a forbidden intrusion on the field of free expression." *Id*. (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984)).

Defendants Oakland Benta and Anthony Elskoe were hired to provide security for an executive on the day of the event. They were employees of Emerging Communications ("EmCom"), a private telecommunications company. Benta was EmCom's Director of Security and Elskoe worked under Benta's supervision.

Things did not go exactly as planned that day; for reasons that are unclear, Senator Bryan's name was omitted from the written program on the day of the ceremony. However, he spoke directly to the Governor who assured Bryan that he would nevertheless be able to speak. At some point during the ceremony, Bryan approached the bandstand along with a crowd of supporters and asked Gerard Emanuel, who was to introduce the keynote speaker, whether he could speak. It is undisputed that the master of ceremonies had not yet called Bryan to the stage. Emanuel signaled for Bryan to wait, but Bryan nevertheless attempted to follow Emanuel onto the stage.

The Governor's Chief of Security directed those around him, including defendants Benta and Elskoe, to prevent Bryan from entering the bandstand in an apparent effort to avoid a disruption. Bryan was blocked and/or pushed back as he tried to continue up the stairs, and was warned not to disobey security. Later in the program, Bryan once again attempted to get on the stage and was again prevented from doing so by several security personnel including Elskoe and Benta. Bryan alleges that Elskoe choked him and injured his back during the ensuing altercation. The ceremony was subsequently halted without Bryan speaking.

Thereafter, Bryan sued the Governor of the Virgin Islands, several corporations,

and several private security guards, in the Superior Court of the Virgin Islands. He alleged assault, battery, as well as First Amendment violations under 42 U.S.C. § 1983. By the time the case came to trial, all defendants except Benta and Elskoe had been dismissed.

The trial proceeded with those two defendants, and they moved for judgment as a matter of law on the First Amendment claim at the close of Bryan's case in chief. The motion was denied, but renewed after both sides rested. The court again denied the motion and gave the case to the jury. The jury awarded $260,000 for Bryan against both defendants on Bryan's First Amendment claim. After the verdict was returned, the court again denied a defense motion for judgment as a matter of law and entered judgment against the defendants.

The District Court of the Virgin Islands, Appellate Division, affirmed the judgment. The court did not consider defendants' challenge to the sufficiency of plaintiff's First Amendment claim because the court was under the mistaken impression that defendants had not filed a post-verdict motion pursuant to Federal Rule of Civil Procedure 50(b). The court recognized the "harsh result" of its decision because it was skeptical that the evidence supported plaintiff's First Amendment claim. App. 9. The court explained: "other than sparse testimony from the Governor's security chief about a split second instruction he gave to Defendants directing them to stop Bryan from mounting the bandstand, the record contains precious little evidence of a 'close nexus' between [Defendants] and the territorial authorities." *Id.* However, the district court

4

refused to consider any challenge to the First Amendment claim because "the record submitted does not contain the final portion of the trial transcript where the jury read its verdict and the parties were excused." App. 4. This appeal followed.

Upon review of the record, it was discovered that defendants' original counsel had inadvertently omitted the transcript of the last day of the superior court trial proceedings that had been submitted to the district court as well as this court. The missing pages of the transcript show that, contrary to the district court's belief, the defendants had properly renewed their Rule 50(b) motion after the jury returned a verdict. We subsequently granted a defense request to supplement the record with the complete trial transcript.

## II. ANALYSIS

### A. First Amendment Claim

Defendants renew their contention that they are entitled to judgment as a matter of law on plaintiff's First Amendment claim because they are not state actors and could not violate plaintiff's right to free speech. We agree.

It is undisputed that defendants were private security guards employed by EmCom, a private telecommunications company. Accordingly, they can only be liable under §1983 if they were acting under color of state law or "jointly engaged with state officials in the prohibited action." *Harvey v. Plains Twp. Police Dept.*, 421 F.3d 185, 195 (3d Cir. 2005) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). "[T]he inquiry is whether there is a sufficiently close nexus between the State and the challenged

5

action of the private party so that the action of the latter may be fairly treated as that of the State itself." *Id*. A private actor must be at least a "willful participant in joint activity with the State or its agents." *Id.* We have interpreted "willful" to mean "voluntary, uncoerced participation." *Id.* at 196. Therefore, "[a] private citizen acting at the orders of a police officer is not generally acting in a willful manner, especially when that citizen has no self-interest in taking the action." *Id*. There is nothing on this record that would remove either of these defendants from the scope of that general rule.

Here, several witnesses, including one of plaintiff's own witnesses, testified that the Governor's Chief of Security was in charge of security at the event. In the course of the melee that unfolded at the ceremony, the Chief of Security directed defendants to prevent Bryan from entering the bandstand, and defendants obeyed the Chief's order. The defendants therefore stopped Bryan from going on stage solely because the Chief of Security ordered/asked them to do so. That is simply not sufficient to establish state action. *See id.* at 195 (holding that plaintiff had failed to establish that the landlord was a state actor because the landlord had merely acted at the police officer's direction in opening the plaintiff's front door).

Moreover, Bryan has not shown that defendants were involved with planning the event, that they were in any way responsible for Bryan's omission from the program, that they had a contract or agreement with the Governor, or that they received any remuneration from the Governor for their efforts. Viewing the facts in light most favorable to Bryan, the non-movant, there is simply no basis for finding that either

6

defendant was a "willful" participant acting jointly with the state. Accordingly, Bryan should not have prevailed on his First Amendment claim and the trial court should have granted the defendants' motion for judgment as a matter of law. That conclusion is so clear that we could normally simply end our brief discussion here.

However, as suggested at the outset, there is another very regrettable chapter to this story that needs to be addressed, and we would be remiss in exercising our supervisory authority over members of the bar if we simply ignored it.

### B.  Conduct of Attorney Maxwell McIntosh

Oral argument in this case was scheduled for December 15, 2010. As of November 22, 2010, Mr. Maxwell McIntosh, Bryan's counsel, had not filed a brief in this matter. Accordingly, the clerk's office issued a letter at the court's direction ordering Mr. McIntosh to file a brief no later than December 3, 2010. No brief was filed. The clerk's office then called Mr. McIntosh. He explained that he was not the "arguing counsel," that he did not intend to file a brief or be present at the oral argument, and that he would contact Bryan to ascertain who would be arguing his case. Notwithstanding these comments, Mr. McIntosh has always been listed as the counsel of record for Bryan.

We issued an order on December 7, 2010 giving Mr. McIntosh two choices: (1) to "file an acceptable brief with the clerk of court no later than close of business on Wednesday, December 8, 2010 and either appear at oral argument on Wednesday, December 15 prepared to argue this case when it is called or arrange for alternative counsel to do so" or (2) to appear at oral argument and "be prepared to show cause why

7

he should not be held in contempt of this court and have appropriate sanctions imposed." Mr. McIntosh did not file a brief by December 8, nor did he provide any explanation to the Court about how he intended to proceed.

The clerk's office once again called Mr. McIntosh to inquire whether he intended to respond to our December 7, 2010 order. Mr. McIntosh advised the clerk's office that he never received a copy of the order. The clerk's office later verified that the order had been sent electronically to an email address that Mr. McIntosh had listed with the court. No "bounceback" notification was ever received that would have suggested that Mr. McIntosh's email address was no longer valid.

The clerk's office subsequently called Mr. McIntosh again and informed him that he was required to appear for oral argument. Mr. McIntosh appeared for argument in the Virgin Islands on December 15, 2010. When asked why he refused to comply with our order, he explained that he and his client had made a "procedural decision" not to file a brief, although the reasons for that decision were never explained. Mr. McIntosh also insisted that he never received our order directing him to file a brief and surmised that the electronic notice may have been placed in his junk email folder. He confirmed that the email address that the court had on file was indeed his current email address.

As we explained to Mr. McIntosh during oral argument, Mr. McIntosh is the counsel of record and was therefore obligated to either file a brief pursuant to our order or request an extension of time to file a brief. We further explained that if Mr. McIntosh was no longer the counsel of record, he should have filed a motion withdrawing from

8

representation. Yet, to no one's great surprise, he failed to do this as well. In light of Mr. McIntosh's cavalier attitude toward complying with orders of this court, we imposed a fine of $500. There is more.

For the first time, during oral argument, Mr. McIntosh stated that Senator Bryan had alleged both a First Amendment claim as well as a claim of defamation, and he insisted that the jury's verdict form finding in favor of Bryan reflected that the jury had awarded damages on both theories. Accordingly, Mr. McIntosh argued that even if we found no merit in Bryan's First Amendment claim, we could still affirm the judgment based on the defamation claim. Kim Kocher, defendants' counsel, responded that she was not aware that Bryan had ever raised a defamation claim and that she would need to confirm his representation by reviewing the verdict form, which apparently neither counsel had brought to the argument. In order to resolve the apparent confusion, we directed Ms. Kocher to file a letter pursuant to Federal Rule of Appellate Procedure 28(j) to clarify whether a defamation claim was properly before this court.

On December 23, 2010, Ms. Kocher submitted a letter as well as several items from the record that unequivocally showed that there was no defamation claim. These documents included: (1) Bryan's second amended complaint which did not include a count for defamation; (2) the jury charge which did not contain any instruction on defamation; (3) the verdict form which did not include an interrogatory on defamation; and (4) the judgments, which made no mention of defamation.

As if this were not enough, on February 20, 2011, his client, Senator Bryan,

submitted a letter to the court disputing that he and Mr. McIntosh had ever made a "procedural decision" not to file a brief in this matter. Bryan explained as follows:

> When I sat in the courtroom when Justice McKee questioned Attorney McIntosh as to his failure to file the appropriate responses and briefs, he responded contrary to the truth about his reason and decision not to file the appropriate briefs. I was surprised and upset that Atty. McIntosh would have made such a response to the questions as a licensed practicing attorney in the Virgin Islands. Atty. McIntosh and I *never* had any discussions about not responding to the briefing schedules as requested.

(emphasis in original). Bryan went on to add that he had made "numerous attempts" to speak with Mr. McIntosh about why he said what he did during the oral argument, but that Mr. McIntosh had failed to respond to his repeated inquiries.

Of course, we have no way of knowing if the letter that purportedly came from Senator Bryan is authentic or whether, even if authentic, the statements are accurate or whether there is an explanation for what happened. However, we take this opportunity to underscore that an attorney's misrepresentations to a court are a very serious matter. Rule 3.3 of the ABA Model Rules of Professional Conduct states that a "lawyer shall not knowingly make a false statement of fact or law to a tribunal." Here, Mr. McIntosh made false representations to the Court about several key portions of the record, including the very claims that his client raised at trial. Furthermore, contrary to Mr. McIntosh's assertions during oral argument, it now appears that plaintiff may not have ever agreed

10

with, or even discussed, the alleged "procedural decision" to not file a brief in this case.[2]

Even if we gave Mr. McIntosh the benefit of the doubt that he had a momentary lapse in memory about Bryan's claims against the defendants, his failure to comply with a court order to file a brief is inexcusable, and his cavalier attitude toward this court warrants further inquiry.

To say the least, we are baffled by Mr. McIntosh's failure to respond to our repeated orders directing him to file a brief. A judicial order is not a request or an invitation; it is an "order." An attorney cannot simply decline it or decide to ignore it. We expect an attorney to file a brief on behalf of a client in advance of oral argument, particularly in light of a court order directing him to do so. *See Reitz v. County of Bucks*, 125 F.3d 139 (3d Cir. 1997) (explaining that it is "incomprehensible that [an attorney] faced with such an order would not know that he should comply timely and that a failure to do so would undermine the authority of the court"). Nor are we sympathetic to Mr. McIntosh's claim that he never received a copy of our orders. Mr. McIntosh verified that we had his current email address on file, and he is charged with ensuring that electronic notices from the court that he is an officer of do not fall into the cybernetic abyss known as a "junk mail" folder.

For the foregoing reasons, we will vacate the decision of the District Court of the Virgin Islands on the First Amendment claim. As noted at the outset, we will also refer Mr. McIntosh to the Third Circuit Court of Appeals' Standing Committee on Attorney

---

[2] As we explained to Mr. Mcintosh during argument, even if such an agreement had been reached with a client, it would not have created a license to ignore a court order.

11

Discipline pursuant to Federal Rule of Appellate Procedure 46(c) and Third Circuit Rule of Attorney Disciplinary Enforcement 4.2, and to the Supreme Court of the Virgin Islands for any action that they deem appropriate.